IN RE: APPLICATION OF GOFORTH PROPERTIES, INC.

GOFORTH PROPERTIES, INC., CHAPEL HILL ELECTRIC CO., INC., GEORGE FRAZIER, AND H. MARK DALEY v. THE TOWN OF CHAPEL HILL

No. 8415SC1312

(Filed 6 August 1985)

1. **Municipal Corporations § 30.6— entitlement to special use permit**

When an applicant has produced competent, material and substantial evidence tending to establish the existence of the facts and conditions which an ordinance requires for the issuance of a special use permit, he is *prima facie* entitled to it. A denial of the permit should be based upon findings contra which are supported by competent, material and substantial evidence appearing in the record.

2. **Municipal Corporations § 31.2— decision on special use permit—judicial review**

In reviewing a town council's decision on an application for a special use permit, the court must apply the whole record test and consider not only the evidence which in and of itself justifies the town council's result, but also consider contradictory evidence. However, the whole record test does not allow the reviewing court to replace the council's judgment as between two reasonably conflicting views.

3. **Municipal Corporations § 30.6— denial of special use permit—traffic congestion and safety hazard**

The evidence supported a town council's denial of a special use permit for a planned apartment development on the ground that the development was not located and designed so as to maintain or promote the public health, safety and general welfare because it would result in increased traffic congestion which would block a fire station driveway and cause increased danger to school children and other pedestrians and bicyclists in the area.

APPEAL by petitioners from *Battle, Judge*. Order entered 20 July 1984 in Superior Court, ORANGE County. Heard in the Court of Appeals 6 June 1985.

This appeal arises out of the denial of a request for a special use permit. The petitioner-appellants are the record owners of the tract for which the special use permit was sought.

On 3 May 1983, petitioner Goforth Properties, Inc. filed an application with the Town of Chapel Hill seeking a special use permit for construction of a planned development of 233 housing units to be known as Oxford Hills Apartments on Old Oxford Road. Following hearings in June 1983 before the Chapel Hill

Planning Board and Chapel Hill Town Council, Goforth amended its application on 30 June 1983 to change its proposal from a development of 233 units to a development of 180 units. Following a hearing on 5 July 1983, the Chapel Hill Planning Board recommended that the Town Council approve the application. On 11 July 1983, the proposal again came before the Town Council, which ruled that a new public hearing was required due to the changes that had been made in the plan. The matter was reheard before the Planning Board on 6 September 1983. The Planning Board again recommended approval of the application. A public hearing was held before the Town Council on 19 September 1983. Following this hearing, the Town Council referred the proposal to the town manager for his recommendation. On 10 October 1983, the matter came before the Town Council for final action. The town manager recommended that the application be approved. The Town Council, however, adopted a resolution denying the request for a special use permit.

Petitioners then obtained a writ of certiorari in Orange County Superior Court. Following a review of the transcripts of hearings and other materials before the Town Council, the Orange County Superior Court affirmed the denial of the special use permit.

*Manning, Fulton & Skinner, by John B. McMillan and John I. Mabe, Jr., for petitioner appellants.*

*Grainger R. Barrett, Town Attorney for the Town of Chapel Hill, and Hunter, Wharton & Howell, by John V. Hunter III, for respondent appellee.*

JOHNSON, Judge.

[1, 2]  We begin our discussion by stating the applicable principles of judicial review in reviewing a municipality's decision on an application for a special use permit. The reviewing court's tasks include:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a peti-
tioner are protected including the right to offer evidence,
cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of town boards are supported by
competent, material and substantial evidence in the whole
record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 626, 265
S.E. 2d 379, 383, *rehg. denied*, 300 N.C. 562, 270 S.E. 2d 106 (1980).
"In reviewing the sufficiency and competency of the evidence at
the appellate level, the question is not whether the evidence be-
fore the superior court supported that court's order but whether
the evidence before the town board was supportive of its action.
In proceedings of this nature, the superior court is not the trier
of fact. Such is the function of the town board." *Id*. at 626, 265
S.E. 2d at 383. When an applicant has produced competent, mate-
rial, and substantial evidence tending to establish the existence of
the facts and conditions which the ordinance requires for the is-
suance of a special use permit, he is *prima facie* entitled to it. A
denial of the permit should be based upon findings contra which
are supported by competent, material, and substantial evidence
appearing in the record. *Id*. at 625, 265 S.E. 2d at 382. In review-
ing the sufficiency of the evidence, the reviewing court must ap-
ply the whole record test and consider not only the evidence
which in and of itself justifies the Board's result, but also con-
sider contradictory evidence. *Thompson v. Board of Education*,
292 N.C. 406, 233 S.E. 2d 538 (1977); *Jennewein v. City Council of
Wilmington*, 62 N.C. App. 89, 302 S.E. 2d 7, *disc. rev. denied*, 309
N.C. 461, 307 S.E. 2d 365 (1983). The whole record test does not
allow the reviewing court to replace the council's judgment as be-
tween two reasonably conflicting views. *Id*.

Section 8.3 of the Chapel Hill Development Ordinance pro-
vides that no special use permit shall be approved by the Town
Council unless each of the following findings is made concerning
the proposed special use or planned development:

(a) That the use or development is located, designed, and pro-
posed to be operated so as to maintain or promote the public
health, safety, and general welfare;

(b) That the use or development complies with all required regulations and standards of this chapter, including all applicable provisions of Articles 4, 5, and 6 and the applicable specific standards contained in Sections 8.7 and 8.8, and with all other applicable regulations;

(c) That the use or development is located, designed, and proposed to be operated so as to maintain or enhance the value of contiguous property, or that the use or development is a public necessity; and

(d) That the use or development conforms with the general plans for the physical development of the Town as embodied in this chapter and in the Comprehensive Plan.

Thus, if the Town Council fails to find any one of the above, the application must be denied. In denying the application, the Town Council stated it could not make findings of (a), (b) or (d).

[3] Petitioners contend that they produced competent, material and substantial evidence of each of the elements required by the ordinance and that the Council's findings contra were not supported by competent, material and substantial evidence. Since all four findings must be made to receive a permit, we need only consider whether any one of the Council's findings contra were supported by competent, material and substantial evidence in order to affirm the Council's decision. *See Jennewein v. City Council of Wilmington, supra.*

With respect to the first condition, maintenance or promotion of the public health, safety, and general welfare, the Council made the following "findings" in its resolution:

WHEREAS, Old Oxford Road is presently a narrow, winding street only some 1330 feet long on the west side of Booker Creek, and

WHEREAS, this development will at least double traffic on Old Oxford Road in one increment, and even possibly increase it by 170% according to one expert's experience, and such an increase would immediately bring this low-traffic record to the lower part of its 3,000-6,000 range for full capacity as estimated by the Town Engineer, and

WHEREAS, this traffic would create congestion on Old Oxford Road and on Elliott Road and intensify that road's function from that of a minor street to that of a significant collector, and

WHEREAS, the improvements proposed for Old Oxford Road will not significantly improve traffic flow at its intersection with Elliott Road, where 80% to 90% of the traffic will be turning left, and

WHEREAS, traffic from this development will cause traffic hazard to pedestrians and bicyclists on Elliott, especially children riding or walking to or from school, and

WHEREAS, traffic from this development will increase the traffic entering the Franklin Street-Elliott Road intersection up to 70%, substantially increasing traffic congestion and increasing the risk of traffic accidents, especially for left turns onto Franklin Street in the peak evening traffic hours, and

WHEREAS, this traffic increase will substantially increase the chances that cars backed up on Elliott Road and the Franklin Street intersection will block the fire station driveway during a public safety or health emergency, . . . .

Based upon the foregoing, the Council adopted the following resolution:

BE IT RESOLVED by the Council of the Town of Chapel Hill that, with respect to the Special Use Permit application for Oxford Hills submitted by Goforth Properties and received by the Town on September 1, 1983, the Council fails to make the following findings set forth in Section 8.3 of the Development Ordinance:

1. That the proposed development will be located, designed, and proposed to be operated so as to maintain or promote the public health, safety, and general welfare, because:

    a. Traffic from this development will create traffic congestion at the intersection of Elliott and Old Oxford Roads, especially during peak travel hours; and

    b. Traffic from this development will exacerbate traffic congestion on Elliott Road between Old Oxford Road and

Franklin Street, will exacerbate delays in making left turns to Franklin Street, and will add 50% or more traffic entering the intersection on Elliott, especially during the peak travel hours; and

c. Traffic from this development will create traffic safety concerns and increase sharply the risk of traffic accidents on Elliott Road between Old Oxford Road and Franklin Street, will conflict with traffic exiting the Arbors Office Park, and will substantially raise the chances that the fire station driveway will be blocked during a public safety or health emergency, impeding the response of fire or rescue vehicles; and

d. Traffic from this development will increase traffic safety concerns for pedestrians and bicyclists, particularly children going to or from school, on Elliott from Old Oxford to Audubon, Clayton or Curtis Roads.

The evidence showed that the proposed apartment complex would be located on the east side of Old Oxford Road, which is a narrow, winding road running north-south. Old Oxford Road empties to the south onto Elliott Road, which runs east-west. Elliott Road intersects with Franklin Street a short distance to the east. About three blocks to the west of the Old Oxford Road and Elliott Road intersection are an elementary school and a junior high school. On the south side of Elliott Road at the intersection of Elliott Road and Franklin street is a fire station. Directly across Elliott Road from the fire station is a bank. Next door to the bank to the west on Elliott Road is a new office complex, which has 303 parking spaces. Next to the driveway of the office complex, 50 feet west of the bank driveway, is a driveway to an apartment complex. Between the bank driveway and the apartment complex driveway is a school bus stop. Farther to the west, at the intersection of Old Oxford Road and Elliott Road, is a church and day care center.

The evidence is uncontradicted that the proposed Oxford Hills Apartment Complex would increase traffic on Old Oxford and Elliott Roads. Petitioners' own experts testified that the traffic on Old Oxford Road would increase from 1,081 vehicles per day to 2,581 vehicles per day and that the traffic on Elliott Road would increase from 2,278 vehicles per day to approximately 3,700

vehicles per day, and that the traffic at the intersection of Elliott Road and Franklin Street would increase by 50%. These figures did not take into account the new office complex on Elliott Road. The expert witness of the opponents to the project testified that traffic would increase by 170% on Old Oxford Road and by 70% on Elliott Road. He also estimated that approximately 408 more vehicles per day would travel on Curtis Road and Caswell Road near the elementary school and junior high.

Petitioners' expert witnesses testified that based upon their studies the existing streets could handle the increased traffic and that the increased traffic would not create a safety hazard. Petitioners proposed to improve Old Oxford Road and to add a left turn lane at the intersection of Old Oxford and Elliott Roads. Petitioners' experts conceded, however, that the left turn lane would not materially improve the traffic flow as most traffic would be turning left anyway.

Several witnesses in opposition to the project expressed concern for the safety of children walking or riding bicycles to school along Elliott Road, which has no sidewalks. Several had noticed an increase in the number of speeders on Elliott Road, which was becoming a cross-town artery. With increased traffic on Elliott Road caused by the proposed apartment complex, they foresaw increased danger to school children.

Several opponents also expressed concern over increased traffic congestion at the intersection of Elliott Road and Franklin Street, which already was rated as the third must dangerous intersection in Chapel Hill. Many voiced a concern that increased traffic congestion would hamper the ability of fire personnel from the Elliott Road fire station to respond to fires. The evidence showed that the sixth or seventh automobile at the traffic light at the Elliott Road/Franklin Street intersection blocked the entrance/exit of the Elliott Road fire station. Some citizens testified that existing traffic, without taking into account traffic from the proposed Old Oxford Apartment complex and the new office complex, was already contributing to traffic backups on Elliott Road that frequently block the exit to the fire station. Many complained about having to wait more than one cycle of the light to make a left turn from Elliott Road onto Franklin Street. Petitioners' experts testified that in peak hours that a motorist could

expect to complete a left turn on the first cycle of the traffic light 70% or less of the time. They conceded that traffic would back up in peak hours but stated that emergency vehicles would get out "as soon as the light changes." Petitioners testified that they had discussed the problem with fire department personnel, who had expressed confidence in their ability to respond to fires in a timely manner despite traffic congestion. No report from the fire department, however, was introduced at the hearing.

Based upon the foregoing, we hold that there was competent, material and substantial evidence to support the Council's findings and conclusions. The opponents' concerns about the adverse effect of the proposed apartment complex upon traffic congestion and safety were valid. These concerns may be the basis of the denial of a special use permit. *See* 3 Rathkopf, Law of Zoning and Planning, Sec. 41.09 (Supp. 1984). The Council's action, therefore, was not arbitrary and capricious.

Petitioners next contend that the Council improperly required them to establish conclusively their entitlement to a special use permit. We can find nothing in the Council's resolution or in the record that the Council applied a conclusive proof standard of proof. Instead, it is clear to us that the Council decided the matter on the basis of competent, material and substantial evidence.

We need not consider petitioners' remaining contention that the Council's finding that the design and plans for the tract did not suit or enhance the tract was based upon incompetent evidence because the one finding which we have found to be supported by competent, material and substantial evidence is sufficient to support the Council's denial of the permit.

In conclusion, we hold the Council's decision was supported by competent, material and substantial evidence, was not arbitrary and capricious and was not affected by error of law.

Affirmed.

Judges WELLS and COZORT concur.