GHIDORZI CONSTRUCTION, INC., A NORTH CAROLINA CORPORATION v. TOWN OF CHAPEL HILL, A MUNICIPAL CORPORATION; JOSEPH L. NASSIF, MAYOR; R. D. SMITH, A COUNCILMAN; NANCY PRESTON, A COUNCILMAN; JONATHAN HOWES, A COUNCILMAN; BEVERLY KAWALEC, A COUNCILMAN; DAVID GODSCHALK, A COUNCILMAN; DAVID PASQUINI, A COUNCILMAN; MARILYN BOLTON, A COUNCILMAN; AND BILL THORPE, A COUNCILMAN

No. 8515SC997

(Filed 6 May 1986)

Municipal Corporations § 30.6— denial of special use permit—traffic congestion and safety

The evidence supported a town council's denial of a special use permit for construction of ninety-one dwelling units on a 15.2-acre tract based on the adverse effect of the proposed development upon traffic congestion and safety in the area. The town council was not required to approve the proposed development because future improvements could eliminate traffic congestion problems.

APPEAL by respondents from *Bowen, Judge.* Order and Judgment entered 25 June 1985 in Superior Court, ORANGE County. Heard in the Court of Appeals 17 January 1985.

*Jordan, Brown, Price & Wall by Charles Gordon Brown and M. LeAnn Nease for petitioner appellee.*

*Hunter, Wharton & Howell by John V. Hunter, III for respondent appellants.*

COZORT, Judge.

This appeal arises out of the denial of an application for a special use permit. In August of 1984, petitioner Ghidorzi Construction, Inc., applied to the respondents Town of Chapel Hill for a special use permit for the construction of ninety-one dwelling units on a 15.2-acre tract in Chapel Hill to be known as Windy Hill. On 19 November 1984 respondents met in a regular session to conduct a public hearing concerning petitioner's application. The Planning Board of the Town of Chapel Hill, the Appearance

Ghidorzi Construction, Inc. v. Town of Chapel Hill

Commission of the Town of Chapel Hill, and the Town Manager all recommended that the petitioner's application be approved on the condition that Erwin Road be widened by the petitioner. On 10 December 1984, respondents met in regular session to consider the evidence presented at the 19 November meeting. The Town Manager again recommended that the Council approve the application. The Town Council ordered an additional public hearing on the application, which was held on 18 March 1985. Following this hearing, the Town Council voted to refer the proposed development to the Town Manager for additional study. On 9 April 1985, the matter again came before the Town Council. The Town Manager again recommended approval of the development; however, the Town Council adopted a resolution denying the application.

Petitioner appealed the Council's denial by filing a Petition for Writ of Certiorari in the Superior Court of Orange County. After the writ was issued, the superior court judge reviewed the transcripts of hearing and other materials before the Town Council. The superior court reversed the denial of the special use permit. Respondents appealed.

The sole issue presented on appeal is whether the Town Council's denial of the special use permit is supported by substantial, material, and competent evidence when viewed in light of the entire record.

In reviewing a municipality's decision on an application for a special use permit, the court's scope of review includes:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Coastal Ready-Mix Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 626, 265 S.E. 2d 379, 383, *reh'g denied*, 300 N.C. 562, 270 S.E. 2d 106 (1980). A denial of a special use permit should be based on findings which are supported by competent, material, and substantial evidence appearing in the record. *Application of Goforth Properties, Inc.*, 76 N.C. App. 231, 233, 332 S.E. 2d 503, 504 (1985). The question before this Court is not whether the evidence before the superior court supported that court's order but whether the evidence before the Town Council supported the Council's action. *Id.* The superior court is not the trier of fact. That is the function of the Town Council. *Id.* In determining the sufficiency of the evidence supporting the Council's decision, we apply the whole record test considering not only the evidence which justifies the Council's decision but also that which fairly detracts from it. *Thompson v. Board of Education*, 292 N.C. 406, 233 S.E. 2d 538 (1977). The whole record test does not allow this Court or the superior court to replace the Council's judgment as between two reasonably conflicting views. *Id.*

Sec. 8.3 of the Chapel Hill Development Ordinance provides that no special use permit shall be approved by the Town Council unless each of the following findings is made concerning the proposed special use or planned development:

(a) That the use or development is located, designed, and proposed to be operated so as to maintain or promote the public health, safety, and general welfare;

(b) That the use or development complies with all required regulations and standards of this chapter, including all applicable provisions of Articles 4, 5, and 6 and the applicable specific standards contained in Sections 8.7 and 8.8, and with all other applicable regulations;

(c) That the use or development is located, designed, and proposed to be operated so as to maintain or enhance the value of contiguous property, or that the use or development is a public necessity; and

(d) That the use or development conforms with the general plans for the physical development of the Town as embodied in this chapter and in the Comprehensive Plan.

Ghidorzi Construction, Inc. v. Town of Chapel Hill

The Town Council must find that all of the above exist or the application must be denied. In denying petitioner's application for a special use permit, the Town Council found that the proposed project did not satisfy subsections (a) and (b). The Council stated the following reasons for denying the application:

(1) [T]he proposal lacks sufficient separation and open areas among buildings and recreation facilities to provide effective livability space that avoids a sense of overcrowdedness, (2) the public traffic safety would not be maintained or promoted on Erwin Road in the vicinity of the proposed development, (3) the site design does not adequately consider the relationship of the development to natural topography . . . .

Petitioner contends that it produced competent, material, and substantial evidence of each of the elements required by the ordinance and that the Council's reasons for denying the application were not supported by competent, material, and substantial evidence. Because all four findings must be made to receive a permit, we need only consider whether any one of the Council's reasons for failing to make a required finding was supported by competent, material, and substantial evidence in order to affirm the Council's decision. See Application of Goforth Properties, Inc., supra.

The first condition is "that the use or development is located, designed, and proposed to be operated so as to maintain or promote the public health, safety, and general welfare." In regard to this condition the Council found that public traffic safety would not be maintained or promoted on Erwin Road in the vicinity of the proposed development and that the proposal failed to provide adequate livability space. Petitioner contends it offered evidence showing that the proposed development would maintain and promote public traffic safety. The proposed development would affect primarily three thoroughfares in Chapel Hill: Weaver Dairy Road, Erwin Road, and U.S. 15-501. Petitioner submitted two Traffic Impact Reports in its application for a special use permit. These reports analyzed the effect of the proposed development on traffic. One report stated, inter alia, the following:

---

---

*Existing Traffic Conditions*

Analysis of existing morning and afternoon peak hour traffic volumes shows a *high degree of congestion* at the intersection of Erwin Road and U.S. 15-501. . . .

* * * *

*Planned or Programmed Improvements*

Weaver Dairy Road is proposed to be realigned in the vicinity of Erwin Road to tie into the Sage Road extension. This change, when complete, would relocate a high volume intersection away from the Windy Hill entrance. The portion of this project south of Erwin Road is currently under construction. [Emphasis added.]

The report went on to state, "with the additional traffic generated by Windy Hill and the other approved developments, traffic on Erwin Road will approach the road's capacity, although they will be within the link capacity." The petitioner also submitted a letter from David R. Taylor, Town Manager of Chapel Hill, which outlined the status of developments in the area surrounding the proposed development and the impact of those developments on traffic. The letter stated: "Concerning the capacity of the intersection of Erwin Road, Dobbins Road and U.S. 15-501, this intersection currently experiences congestion and the anticipated increase in traffic from approved projects would increase this congestion. While it would be desirable to have improvements made to this intersection before development of these properties, we do not believe a hazardous traffic condition will result from the increase in traffic. . . . However, the high volume of traffic and traffic speeds at U.S. 15-501 and Erwin Road/Europa Drive provide the potential for serious personal injury and property damage."

At the 18 March 1985 public hearing before the Town Council, Manager Taylor presented a traffic impact analysis prepared by the Chapel Hill Planning Department in March of 1985. The analysis noted that development along Erwin Road and Weaver Dairy Road had increased rapidly during the previous two years and that 737 new dwellings had been approved for the area, most of which were currently under construction. The analysis stated:

*Assessment of Impact*

Developments along the Weaver Dairy Road/Erwin Road corridor that have been approved during the last few years will significantly affect traffic flows in the area. Generally, levels of service in the vicinity of these projects will drop.

The most significant deterioration in traffic flow will occur (and is occurring now) at the intersection of Erwin Road and U.S. 15-501. The performance of this intersection will drop from level of service C to level of service E [level of service F is the worst] if all of the approved developments are occupied. The capacity of the roadway will be exceeded by 9 percent. Drivers trying to move through the intersection will experience low speeds and long delays brought about by the congested conditions.

\* \* \* \*

Windy Hill and Cambridge Place would add about 159 trips to the corridor. The additional trips would do little to worsen the level of service considering problems with this corridor created by previously approved development. . . .

\* \* \* \*

All in all, we feel that transportation impacts created by approved and proposed developments would be significant, particulary [*sic*] at the Erwin Road/15-501 intersection.

The Planning Department in conclusion recommended that the town actively pursue road improvements in the area noting that "[m]any years could pass before [these improvements occur] if the Town counts on developers to build [the improvements]." According to the Planning Department the recommended improvements would solve the negative traffic impacts that would occur. Manager Taylor did acknowledge that the Planning Department's traffic analysis did not take into account a proposed extension from U.S. 15-501 to Erwin Road, a portion of which was under construction as of 18 March 1985. Manager Taylor, however, noted that there were no immediate plans for further construction of the extension.

Based on our review of the record, we hold that there was competent, material, and substantial evidence to support the

Council's findings and conclusions. Concerns about the adverse effect of the proposed development upon traffic congestion and safety were valid. Such concerns support the denial of a special use permit. *See Application of Goforth Properties, Inc., supra,* at 238, 332 S.E. 2d at 507. It is true that future improvements could eliminate the traffic congestion in the area; however, the Town Council is not bound to approve a proposed development because the present traffic problems may be solved at some point in the future.

Having determined that there is competent, material, and substantial evidence to support the Council's denial of the special use permit to petitioner on this basis, we need not consider whether all of the Council's findings were supported by such evidence. The decision of the superior court reversing the denial by the Council of petitioner's application for a special use permit is, therefore,

Reversed.

Judges EAGLES and MARTIN concur.