TRIPLE E ASSOCIATES, A NORTH CAROLINA PARTNERSHIP, C. L. MARTIN, ANNIE BELL M. LOWERY, BESSIE M. HARTIS, JOE R. MARTIN, DOROTHY ANNE M. GRANT, ALLIE ROSE M. HARRELL, JULIA M. WAITE, JASON THOMAS MARTIN, LAWRENCE NORMAN, MARTHA ALICE B. OWNBY, MILTON R. MARTIN, BETTY M. FOWLER, BRENDA KAYE McDONALD, MARY KATHERINE B. TICE, MACK THOMAS BOYTE, MARY ANN M. MELVIN, ALLAN F. MacLEAN, III, CHERI MacLEAN GERRARD, SYLVIA STEVENSON SMITH, PETITIONERS v. THE TOWN OF MATTHEWS, NORTH CAROLINA; SHAWN LEMMOND, MAYOR OF THE TOWN OF MATTHEWS AND MEMBER OF THE BOARD OF COMMISSIONERS OF THE TOWN OF MATTHEWS; TED KIKER, M. DAVID BLAND, R. LEE MYERS, ALEX J. SABO, BILL BRAWLEY, AND KATHY ABERNETHY, MEMBERS OF THE BOARD OF COMMISSIONERS OF THE TOWN OF MATTHEWS, RESPONDENTS

No. 9126SC139

(Filed 18 February 1992)

**Municipal Corporations § 30.6 (NCI3d)— day care facility—special use permit denied—evidence of entitlement**

Petitioners had sufficient competent and material evidence before the Town Board to establish their entitlement to a special use permit for a day care facility where the ordinance required as a prerequisite for approval of a special use permit that the proposed use be consistent with the most recent plan, that the proposed use be compatible with the general

characteristics of the area, and that the proposed use not create or seriously worsen the congestion on area thoroughfares beyond designated levels of service. The trial court noted in its findings that petitioners had produced competent, material and substantial evidence under the requirements of *Humble Oil & Refining Company v. Board of Aldermen of the Town of Chapel Hill*, 284 N.C. 458; the Town Board must then have before it competent, material and substantial evidence to the contrary in order to deny the permit.

**Am Jur 2d, Zoning and Planning §§ 284-288.**

APPEAL by petitioners and respondents from judgment entered 1 November 1990 by *Judge Raymond A. Warren* in MECKLENBURG County Superior Court. Heard in the Court of Appeals 12 November 1991.

Triple E Associates (petitioners) are a group of landowners in the Town of Matthews who wished to construct and maintain a day care facility on their property consisting of a 3.89 acre tract of land. This property is located within an R-15 residential zone which includes single family housing. The property fronts to the east on Sardis Road and to the south on N.C. Highway 51, both of which are major thoroughfares. The northern portion of the property is adjacent to the City of Charlotte's five million gallon water storage tank, and the Cross & Crown Lutheran Church adjoins the property to the west. Respondents are the Mayor and Board of Commissioners of the Town of Matthews.

On 22 May 1989, petitioners filed a petition for a special use permit with the Town of Matthews ("Town"), and sought to withdraw a previously filed rezoning petition. At the time, Section 3319.1 of the Zoning Ordinance of the Town of Matthews ("the ordinance") allowed day care facilities to be established in any R-15 residential district by special use permit provided certain conditions were satisfied.

On 12 June 1989, the Board of Commissioners ("Town Board"), on its own motion, set a hearing to consider repealing the special use permit provisions from the ordinance. Subsequent to the hearing on 10 July 1989, the Town Board voted to repeal the special use permit provisions under the ordinance. Petitioners' requested public hearing on the special use permit application was denied and the petition was returned to petitioners with the filing fee.

TRIPLE E ASSOCIATES v. TOWN OF MATTHEWS

[105 N.C. App. 354 (1992)]

Pursuant to a Petition for Writs of Certiorari and Mandamus, however, an order was issued by the Superior Court directing the Town Board to conduct a public hearing on the special use permit petition pursuant to the terms and provisions of the ordinance as it existed on 22 May 1989.

A hearing on the special use permit application was held on 18 January 1990 and continued on 24-26 January 1990, when it finally concluded with the Town Board referring the matter to the Planning Commission for a recommendation. At that time Section 3319.3 of the ordinance provided, as a prerequisite to approval of the special use permit, that evidence presented at the hearing must establish:

.1 That the proposed use will be consistent with the most recent plan, for the area, when one exists.

.2 That the proposed use will be compatible with the general characteristics of the area and with respect to the location of the structure; the location, design and screening of parking and service areas; the location, size and character of signs; and the streetscape.

.3 That the proposed use will not create or seriously worsen the congestion on area thoroughfares beyond the stable flow condition (level of service "C"), or beyond level of service "B" on area residential (non-thoroughfare) streets.

On 20 March 1990, the Planning Commission made findings under the ordinance that: (1) the proposed use was consistent with the most recent plan for the area; (2) the proposed use was compatible with the general characteristics of the area; and (3) the traffic generated by the proposed use would create or permanently worsen the congestion on area thoroughfares beyond the level of service "C." The Planning Commission thereby recommended the Town Board deny the special use permit. On 29 May 1990, the Town Board voted to deny the special use permit, finding that none of the three criteria required by the ordinance had been established.

The trial court in its 1 November 1990 order affirmed the Town Board's denial of the special use permit but made the following conclusions: (1) the proposed use was consistent with the recent plan for the area; (2) the evidence established the day care center would not worsen traffic congestion; and (3) the use was not com-

patible with the general characteristics of the area. The court affirmed the Town Board's decision to deny the special use permit.

*Perry, Patrick, Farmer & Michaux, P.A., by Roy H. Michaux, Jr., and Bailey Patrick, Jr., for petitioner appellants-appellees.*

*Town Attorney Charles R. Buckley, III for respondent appellees-appellants.*

WALKER, Judge.

Petitioners' primary issue on appeal is whether the Town Board based its findings under Section 3319.3 of the ordinance on competent, material and substantial evidence. We hold that the Town Board did not with respect to Sections 3319.3.1 and 3319.3.2 and therefore reverse. We remand this case to the Town Board for further evidentiary hearings under Section 3319.3.3 consistent with this opinion.

Respondents contend the court erred by striking certain of the Town Board's findings as not being supported by competent material and substantial evidence. Under the Town's ordinance, Section 3319.1 provides:

The following uses may be established by a special use permit in residential districts subject to the standards in Section 1626 and all other appropriate provisions of this ordinance.

.1 Day care centers and pre-schools, subject to Section 3119.

Obviously, the Town in adopting this ordinance contemplated the operation of day care facilities in residential districts. Indeed, a rational interpretation of the inclusion of such language in the ordinance would suggest a day care center is an acceptable establishment in a residential district, subject to the requisite conditions necessary for obtaining a special use permit being satisfied. Additionally, under Section 1626.5 of the ordinance, "[d]ay care centers . . . are permitted by right as an accessory to churches or synagogues subject to the dimensional standards established in 3119." The day care center's compatibility with the general characteristics of the area then becomes apparent, since churches and synagogues are permitted in single family residential districts.

Our Supreme Court noted "[t]he inclusion of [a] particular use in [an] ordinance as one which is permitted under certain conditions, is equivalent to a legislative finding that the prescribed use is

one which is in harmony with the other uses permitted in the district." *Woodhouse v. Board of Commissioners of the Town of Nags Head*, 299 N.C. 211, 216, 261 S.E.2d 882, 886 (1980). This Court agreed and concluded a "designation in the Code of an adult bookstore as a 'special use' was the equivalent of a legislative finding that it was compatible with other uses permitted in a Raleigh business district." *Harts Book Stores, Inc. v. City of Raleigh*, 53 N.C.App. 753, 758, 281 S.E.2d 761, 764 (1981). Thus, the ordinance itself specifically addresses the establishment of day care centers in a residential district by allowing such centers as of right if affiliated with a church or synagogue. We believe this to be clearly indicative of a legislative finding that day care centers are compatible with other uses within the residential district.

Despite the foregoing, we do not hold a day care center must conclusively be found to be compatible with other uses and the general characteristics of the district addressing its use. Here, the petitioners' site plan satisfied all minimum technical requirements of the ordinance. Petitioners also stated they could comply with the conditions recommended by the Planning Commission for issuance of the special use permit. Pursuant to Section 3307 of the ordinance, the Town Board would not necessarily be limited in its deliberations to only those conditions recommended by the Planning Commission. "*[T]he board of county commissioners* may issue special use permits . . . in the classes of cases or situations and in accordance with the principles, conditions, safeguards, and procedures specified . . . in the zoning ordinance." *In re Application of Ellis*, 277 N.C. 419, 425, 178 S.E.2d 77, 81 (1970) (emphasis in original).

The North Carolina Supreme Court set forth in *Woodhouse* at 219, 261 S.E.2d at 888, the test the applicant for a special use permit must satisfy. This test provides that:

> [O]nce an applicant . . . shows that the proposed use is permitted under the ordinance and presents testimony and evidence which shows that the application meets the requirements for a special exception, the burden of establishing that such use would violate the health, safety and welfare of the community falls upon those who oppose the issuance of a special exception.

Furthermore:

> When an applicant has produced competent, material, and substantial evidence tending to establish the existence of the

facts and conditions which the ordinance requires for the issuance of a special use permit, *prima facie* he is entitled to it. A denial of the permit should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record.

*Humble Oil & Refining Company v. Board of Aldermen of the Town of Chapel Hill*, 284 N.C. 458, 468, 202 S.E.2d 129, 136 (1974).

The trial court, in its Findings of Fact noted that petitioners had produced competent, material and substantial evidence tending to prove their entitlement to the permit under the requirements of *Humble*. The Town Board must then have before it competent, material and substantial evidence to the contrary in order to deny the permit. We agree with the trial court's Conclusion of Law No. 12 that there was insufficient evidence of a competent, material and substantial nature to rebut petitioners' showing of compliance with Section 3319.3.1, i.e. the proposed use was consistent with the recent plan for the area.

The record indicates that in the Town Board's analysis of Sections 3319.3.1 and 3319.3.2, each contained findings dealing with traffic matters. Thus, it is evident the Town Board considered how traffic would be affected under Sections 3319.3.1, .2 and .3 when it denied the permit. Since traffic issues are dealt with in Section 3319.3.3, as the trial court correctly noted, we hold these findings not to be relevant considerations under Sections 3319.3.1 and 3319.3.2. The Town Board may not create new requirements not outlined in the ordinance to deny the permit. *Woodhouse* at 218-219, 261 S.E.2d at 887. Since the relevant section of the land use plan does not address traffic, it is an improper consideration under 3319.3.1. Section 3319.3.2 does refer to "the streetscape" but the record is devoid of any evidence defining "streetscape" or linking it with traffic related issues.

With regard to Section 3319.3.2, the trial court concluded the Town Board's Findings A, B and C supported Finding E. While the trial court concluded these findings were supported by the evidence, it also stated in part in Conclusion of Law No. 9:

The Town appears to take the position that the proposed use is incompatible *because* it is a day care center. Petitioners correctly describe this as being contrary to *Woodhouse* and *Hart's* [sic] *Book Stores*. The ordinance itself makes a legislative

determination that day care centers *are* compatible under *certain conditions*. (Emphasis in original).

As the trial court observed, the ordinance decrees that day care centers are compatible under certain conditions. Findings A, B and C do not establish incompatibility, however they may be addressed by the Town Board under Section 3307 by attaching "reasonable and appropriate conditions" to the special use permit. When traffic considerations are excluded under 3319.3.1 and 3319.3.2, petitioners have otherwise established their ability to comply with the requisite conditions under these sections of the ordinance.

The trial court's Conclusion of Law No. 12 stated there was insufficient evidence of a competent, material and substantial nature to rebut petitioners' *prima facie* right to the permit under Section 3319.3.3. However, recognizing that traffic issues are properly included under Section 3319.3.3 and are important considerations in determining whether a special use permit should issue, we must look to see if the court's conclusion here is supported by adequate findings of fact. The trial court correctly concluded petitioners established a *prima facie* right to the permit under Section 3319.3, but then concluded there was "insufficient evidence of a competent, material and substantial nature to rebut petitioners' showing of compliance" with this section.

Petitioners' third exception thereby challenges the Town Board's finding the day care center would cause traffic conditions to worsen on area thoroughfares beyond the level "C" specified by Section 3319.3.3 of the ordinance. At the hearing, petitioners offered evidence which tended to show that with the improvements made to the intersection of Sardis Road and N.C. Highway 51, the day care center would not create or seriously worsen the congestion on these thoroughfares beyond the level of service "C." The Planning Board found the proposed use would worsen traffic and the Town Board agreed, finding the Town's evidence sufficient to rebut petitioners' case. The trial court, however, found the opponents' evidence was not competent and material to rebut the petitioners' claim that traffic congestion would not worsen. We agree with the court that the portion of the opponents' evidence which projected traffic conditions into the future (year 2000) should have been rejected as speculative. However, we are not prepared to say that all of the Town's evidence regarding the level of service by 1992 was

not competent and material so as to be insufficient to rebut petitioners' showing of compliance with Sec. 3319.3.3.

A special use permit should not be denied unless supported by competent, substantial evidence in the record. *In re Application of Goforth Properties, Inc.*, 76 N.C.App. 231, 233, 332 S.E.2d 503, 504, *disc. review denied*, 315 N.C. 183, 337 S.E.2d 857 (1985). Clearly, the implementation of the whole record test does not allow this Court or the Superior Court to substitute its judgment for the Town Board "as between two reasonably conflicting views." *Ghidorzi Construction, Inc. v. Town of Chapel Hill*, 80 N.C.App. 438, 440, 342 S.E.2d 545, 547, *disc. review denied*, 317 N.C. 703, 347 S.E.2d 41 (1986). On the other hand, "the commissioners cannot deny applicants a permit in their unguided discretion or . . . refuse it solely because, in their view, [it] would 'adversely affect the public interest.' " *In re Application of Ellis*, 277 N.C. 419, 425, 178 S.E.2d 77, 81 (1970). In reviewing a decision an administrative board is responsible for:

> (3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

> (4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

> (5) Insuring that decisions are not arbitrary and capricious.

*Coastal Ready-Mix Concrete Co. Inc. v. Board of Commissioners of the Town of Nags Head*, 299 N.C. 620, 626, 265 S.E.2d 379, 383 *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980).

From our review of the record, we conclude the petitioners had sufficient competent and material evidence before the Town Board to establish their entitlement to the special use permit under Sections 3319.3.1 and 3319.3.2 of the ordinance. Consequently, we affirm the trial court with regard to its findings and conclusions under Section 3319.3.1 and reverse the court as to its findings and conclusions concerning Section 3319.3.2. We reverse the trial court with regard to Section 3319.3.3 because Conclusion of Law No. 12 is not supported by adequate findings of fact and remand for further proceedings.

It appears from the record, although not referenced in the ordinance, the Town Board's findings or the court's judgment that the "level of service 'C' " standard specified in the ordinance is a defined engineering term which is calculated according to specific standards called for under the Transportation Research Board Special Report 209, Highway Capacity Manual. If so, the standard prescribed in the most recent manual would be used upon remand.

With respect to the reversal of the trial court's ruling on Section 3319.3.3, we remand to the Mecklenburg County Superior Court for further remand to the Town Board with instructions to conduct a *de novo* evidentiary hearing under this Section and to make specific findings of fact as of the date on which the proposed use is scheduled to be put into effect.

Affirmed in part; reversed in part; and remanded for further proceedings consistent with this opinion.

Judges WELLS and LEWIS concur.