C.C. & J. ENTERPRISES, INC., PETITIONER v. CITY OF ASHEVILLE, RESPONDENT AND JACKSON PARK / WOOLSEY NEIGHBORHOOD ASSOCIATION, INTERVENOR-RESPONDENT

No. COA98-310

(Filed 16 March 1999)

## 1. Zoning— special use permit—compliance with ordinance requirements—denial based on general safety concerns—arbitrary and capricious

A city's denial of petitioner's application for a special use permit to build apartments was arbitrary and capricious where petitioner complied with all requirements of the city ordinance governing special use permits; the ordinance does not require that a developer show that the proposal maintains or promotes public health, safety or welfare; and the denial was based on a finding that the developer failed to satisfy the city's concern for public health and safety as stated in a statement of general intent for the ordinance.

## 2. Zoning— special use permit—judicial review—standing of neighborhood association

A neighborhood association was an aggrieved party which had standing to intervene in the judicial review of a city's decision on plaintiff's application for a special use permit to build apartments where the association alleged special damages in its original motion to intervene and particularized the special damages in its amended motion.

Appeal by respondents from order entered 4 December 1997 by Judge C. Walter Allen in Buncombe County Superior Court. Heard in the Court of Appeals 16 February 1999.

*Ball, Barden & Bell, P.A., by Stephen L. Barden, III, for petitioner-appellee cross-appellant.*

*Robert W. Oast, Jr., for respondent-appellant.*

*Siemens Law Office, P.A., by Albert J. Siemens, for intervenor-respondent-appellant cross-appellee.*

LEWIS, Judge.

Respondents City of Asheville ("the City") and Jackson Park/ Woolsey Neighborhood Association ("the Neighborhood") appeal the superior court's order of 4 December 1997 requiring the approval of petitioner's application for a group development. Petitioner cross-appeals the court's order allowing the Neighborhood to intervene. We affirm both of the superior court's orders.

Petitioner owns a 2.75 acre tract of land on which it wishes to develop twenty-four (24) apartment units. The parcel of land is in an area zoned for residential use; the surrounding properties are a mixture of single family homes, duplexes, and triplexes. In February of 1997, petitioner submitted an application and group development plan to the Planning and Development Department of the City for approval as a "Group Development" under Article 6, Section 30-6-1 of Appendix A—Zoning, *Code of Ordinances of the City of Asheville* ("the City Code"). The Planning Department staff and the Technical Review Committee found that the proposal satisfied all development standards and recommended approval of the project. At a public hearing on 5 March 1997, the Asheville Planning and Zoning Commission voted 4-3 to recommend denial of the Group Development application based on safety concerns. Pursuant to City Code section 30-6-2 (F), petitioner's application was scheduled for a public hearing before the Asheville City Council at its regularly scheduled meeting on 25 March 1997. At the meeting, the City Council voted 4-3 to deny petitioner's application for a Group Development.

Petitioner asked the superior court for writs of certiorari and mandamus. On 11 September 1997, the superior court ordered the City to prepare a written decision setting forth the reasons for the denial of petitioner's application. Upon review of the City's decision, the superior court found that petitioner had made a prima facie showing of entitlement to the permit, and that "[r]espondent's decision denying Petitioner's Application . . . is not supported by competent, material, and substantial evidence and is arbitrary and capricious." On 4 December 1997, the court ordered the City to approve petitioner's application as submitted, and it is from this order that respondents appeal. Also on 4 December 1997, the court granted the Neighborhood's motion to intervene; from this order, petitioners appeal.

C.C. & J. ENTER., INC. v. CITY OF ASHEVILLE

[132 N.C. App. 550 (1999)]

Group Developments are a type of conditional use permit, sometimes called "special use permits" in our case law. When we review a municipality's decision regarding an application for a special use permit, we are:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Coastal Ready-Mix Concrete Co., Inc. v. Bd. of Comm'rs*, 299 N.C. 620, 626, 265 S.E.2d 379, 383, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980). This Court determines "not whether the evidence before the superior court supported that court's order[,] but whether the evidence before the Town Council supported the Council's action." *Ghidorzi Constr., Inc. v. Town of Chapel Hill*, 80 N.C. App. 438, 440, 342 S.E.2d 545, 547, *disc. review denied*, 317 N.C. 703, 347 S.E.2d 41 (1986). Reviewing courts conduct a *de novo* review when a party alleges an error of law in the Council's determination; courts use a whole record test when sufficiency of the evidence is challenged or when a decision is alleged to have been arbitrary or capricious. *See In re Willis*, 129 N.C. App. 499, 501, 500 S.E.2d 723, 725 (1998).

The municipal bodies conducting hearings on permit applications also are bound by certain standards as well as by their ordinances, which are not all alike. When an applicant for a special use permit produces competent, material, substantial evidence that he has complied with the requirements of the ordinance, he makes a prima facie showing that he is entitled to a permit. *See Triple E Associates v. Town of Matthews*, 105 N.C. App. 354, 358-59, 413 S.E.2d 305, 308, *disc. review denied*, 332 N.C. 150, 419 S.E.2d 578 (1992). After the prima facie showing, a denial of the permit must "be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record." *Id.* (quoting *Humble Oil & Refining Co. v. Bd. of Aldermen of the Town of Chapel Hill*, 284 N.C.

458, 468, 202 S.E.2d 129, 136 (1974)). Speculatory or mere opinion testimony about the possible effects of a permit are insufficient to support the Council's findings. *See Woodhouse v. Bd. of Comm'rs of the Town of Nags Head*, 299 N.C. 211, 220, 261 S.E.2d 882, 888 (1980); *Piney Mountain Neighborhood Ass'n., Inc., v. Town of Chapel Hill*, 63 N.C. App. 244, 252-53, 304 S.E.2d 251, 256 (1983). Moreover, if no such competent, material evidence appears, the reviewing body must grant the special use permit; failure to do so when the applicant fully complies with specified standards is arbitrary as a matter of law. *Woodhouse*, 299 N.C. at 219, 261 S.E.2d at 887.

[1] In this case, the City's ordinance governing special use permits reads in pertinent part as follows:

> Sec. 30-6-1. Group developments/planned unit developments.
>
> It is the intent of this section to encourage flexibility and innovation in the design and location of structures and land development . . . . It is further intended that these developments will be in harmony with the character of the district in which they are located and that adequate standards will be maintained pertaining to the public health, safety, welfare, and convenience.

City Code, § 30-6-1 (1993). A section titled "Development standards" details specifics of the following ten requirements: density; street access; roadways, parking and loading; drainage; recreational areas; landscaping; group development built in phases; plans and documents; sidewalks, curb and gutter; and street grades. An eleventh requirement is applicable only if a zoning variance is sought, and no zoning variances were requested in petitioner's application.

The City's written decision outlining the reasons for denial of petitioner's application contained the following determination:

> 6. The Project, if developed as proposed, will comply with the technical requirements and development standards contained in or referenced by the City Code, but existing street conditions, topography, access to the Subject Premises, the propensity for storm flooding in the area, and the proposed density of the Project are such that the public health and safety will be materially endangered if the Project is located where proposed and developed in accordance with the submitted site plan.

The City therefore denied petitioner's application based not on a failure to satisfy the requirements listed in the ordinance, but based on a

failure to satisfy the City's more general concern for health and safety. Such concerns are valid and have been upheld when they appear in the ordinance as requirements. *See, e.g., Kenan v. Bd. of Adjustment of the Town of Chapel Hill,* 13 N.C. App. 688, 692-93, 187 S.E.2d 496, 499, *cert. denied,* 281 N.C. 314, 188 S.E.2d 897 (1972).

The Chapel Hill ordinance at issue in *Kenan* and in *Piney Mountain* provided that "[no] Special Use Permit . . . shall be approved by the Council unless each of the following findings is made concerning the . . . planned development. . . ." *Piney Mountain,* 63 N.C. App. at 248, 304 S.E.2d at 254. *See Kenan,* 13 N.C. App. at 692-93, 187 S.E.2d at 499. Four findings were required by the Chapel Hill ordinance before a permit could be issued: (1) that the development would "maintain or promote the public health, safety, and general welfare;" (2) that the development would "compl[y] with all required regulations and standards;" (3) that the development, unless deemed a public necessity, would "maintain or enhance the value of contiguous property;" and (4) that the development "conform[ed] with the general plans" for Town development. *Piney Mountain,* 63 N.C. App. at 248, 304 S.E.2d at 254. Likewise, ordinances at issue in *Rauseo v. New Hanover County,* 118 N.C. App. 286, 290, 454 S.E.2d 698, 701 (1995), *Vulcan Materials Co. v. Guilford County Bd. of Comm'rs,* 115 N.C. App. 319, 323, 444 S.E.2d 639, 642, *disc. review denied,* 337 N.C. 807, 449 S.E.2d 758 (1994), and *Petersilie v. Town of Boone Bd. of Adjustment,* 94 N.C. App. 764, 766-67, 381 S.E.2d 349, 350-51 (1989), included general requirements as absolute conditions to be satisfied before a permit could be issued.

The distinction between those ordinances and the City's ordinance here is obvious. While similar but far less language is used in the City Code here, it is present only as a generalized statement of the intent of the specifications that follow. Nowhere does the Asheville City Code require that a developer show the proposal maintains or promotes public health, safety, or welfare before a permit may issue. Asheville's Code differs significantly from the codes at issue in cases upholding generalized requirements, and this Court cannot rewrite the City's ordinance. *See Wade v. Town of Ayden,* 125 N.C. App. 650, 653, 482 S.E.2d 44, 46 (1997) (holding when ordinance language is clear, courts must give language its plain meaning).

The concerns for safety and convenience are not requirements under Asheville's City Code. *Cf. Three Guys Real Estate v. Harnett County,* 345 N.C. 468, 473, 480 S.E.2d 681, 684 (1997) (holding that

C.C. & J. ENTER., INC. v. CITY OF ASHEVILLE

[132 N.C. App. 550 (1999)]

general statement of intent does not override plain language of statute). The City "may not create new requirements not outlined in the ordinance to deny the permit." *Triple E*, 105 N.C. App. at 359, 413 S.E.2d at 308. Asheville and indeed any municipal government may, as Chapel Hill did, require by ordinance that applications satisfy the council's subjective finding of public health, safety and general welfare. These are not necessitated by a preamble of intent; they must be specified as requirements to be met and found as facts by the council or board. The City found that petitioner had satisfied all of the development standards for approval of the application. "[W]here a zoning ordinance specifies standards to apply in determining whether to grant a special use permit and the applicant fully complies with the specified standards, a denial of the permit is arbitrary as a matter of law." *Woodhouse*, 299 N.C. at 219, 261 S.E.2d at 887 (quoting *Hay v. Township of Grow*, 296 Minn. 1, 5, 206 N.W.2d 19, 22 (1973). *See also, In re Ellis*, 277 N.C. 419, 425, 178 S.E.2d 77, 81 (1970) (holding that where applicant had satisfied all ordinance requirements, commissioners could not deny permit simply in their discretion). A municipality may not deny an application simply because the proposed plan fails to meet portions outlined in the intent section. *See Woodhouse*, 299 N.C. at 216-17, 261 S.E.2d at 886. As such, the City acted arbitrarily and capriciously when it denied petitioner's application in this case. We affirm the superior court's order that the application be allowed.

[2] We now address petitioner's cross appeal. The City found that there was no substantial evidence that property values near the proposed development would be adversely impacted. The superior court heard argument on the standing question, found that the Neighborhood was an aggrieved party, and ordered that it be allowed to intervene. Petitioner asserts that *Heery v. Town of Highlands Zoning Bd. of Adjustment*, 61 N.C. App. 612, 300 S.E.2d 869 (1983) controls and prevents intervention. We disagree, and we affirm the superior court's order.

An "aggrieved party" may seek review of decisions made pursuant to zoning ordinances. *See Heery*, 61 N.C. App. at 613, 300 S.E.2d at 870. In *Heery*, we held that because there was no finding of fact in the trial court's order, and petitioners did not allege any special damages, petitioners were not an aggrieved party and thus lacked standing. In contrast, the Neighborhood alleged special damages in their original motion to intervene and particularized the special damages in their amended motion. Petitioner emphasizes that the City found

there was no evidence of diminished property values; however, the court, not the City, determines standing. The superior court found the Neighborhood to be aggrieved, such a finding is supported by the Neighborhood's pleading, and therefore we affirm. *See Piney Mountain*, 63 N.C. App. at 247, 304 S.E.2d at 253 (holding that when "a corporate petitioner has no property interest, but represents individuals who live in the affected area and who potentially will suffer injury. . . ., such petitioner has standing").

Affirmed.

Judges GREENE and HORTON concur.