GUILFORD FINANCIAL SERVICES, LLC, PETITIONER v. THE CITY OF BREVARD,
A MUNICIPAL CORPORATION, RESPONDENT

No. COA01-206

(Filed 7 May 2002)

**Zoning— subdivision approval—quasi-judicial proceeding**

A City Council's disapproval of a subdivision plat for affordable housing was remanded for further proceedings where the City Attorney apparently advised the Council that the proceeding was legislative, the Council did not conduct its hearing in accord with fair trial standards, and the Council did not state the facts upon which it based its denial with sufficient specificity to allow review, even with the latitude given to findings made by lay bodies. The City could have adopted a "ministerial" subdivision ordinance, but instead enacted a quasi-judicial process; furthermore, the proceeding did not become legislative due to the type of notice given and, under this ordinance, approval did not become automatic after minimum requirements were met.

Judge TYSON concurring in part and dissenting in part.

Appeal by petitioner from judgment entered 2 November 2000 by Judge J. Marlene Hyatt in Transylvania County Superior Court. Heard in the Court of Appeals 28 November 2001.

*Smith, Helms, Mullis & Moore, L.L.P., by James G. Exum, Jr. and Robert R. Marcus, and Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Craig D. Justus, for petitioner-appellant.*

*Ramsey, Hill, Smart, Ramsey & Pratt, P.A., by Michael K. Pratt and James M. Kimzey, for respondent-appellee.*

HUDSON, Judge.

Guilford Financial Services, LLP ("petitioner") appeals from a judgment by the superior court affirming the disapproval by the City of Brevard ("the City") of petitioner's preliminary subdivision plat. For the reasons given below, we vacate and remand to the superior court for remand to the Brevard City Council ("the Council") for further proceedings.

I.

Petitioner seeks to develop an affordable housing community called Laurel Village on approximately five acres located in the City near Outland Avenue. On 28 January 2000, petitioner filed a preliminary subdivision plat with the City's Technical Advisory Committee ("the Committee"). The initial plat showed the site being subdivided into fifteen lots containing a community building and fourteen duplexes. The duplexes comprised twenty-eight units, each having one, two, or three bedrooms. After reviewing the plat, the Committee suggested several changes, none of which are at issue here. Except for the suggested changes, the Committee believed that the preliminary plat complied with the City's Zoning Ordinance and Subdivision Regulations. The Committee recommended that the City's Planning and Zoning Board ("the Planning Board") approve the preliminary plat subject to six enumerated "conditions and/or contingencies."

The Planning Board first considered the preliminary plat at its 15 February 2000 meeting. Some members of the Planning Board and a neighboring resident expressed concerns regarding increased traffic outside the development. The Planning Board tabled consideration of the plat until a later meeting so that traffic information could be obtained.

Subsequent to the 15 February meeting of the Planning Board, petitioner revised the preliminary plat. The revised plat showed sixteen lots containing fifteen duplexes and a community building. The duplexes in the revised plat comprised thirty units: twenty-eight one-bedroom units and two two-bedroom units. The basic lot and street

layout were unchanged. Petitioner explained that the design was changed following a decision to target the elderly and disabled rather than families.

The Planning Board considered the revised preliminary plat at its 21 March 2000 meeting. A neighboring resident presented the Planning Board with a petition containing 147 signatures of those opposed to the development and read a statement detailing the reasons for their opposition. These reasons included traffic impact and safety. Two neighbors addressed the Planning Board and expressed their concerns related to other matters. A member of the Planning Board questioned whether the proposed development complied with the density requirements of the City's Subdivision Regulations and Land Use Plan. Ultimately, the Planning Board approved the preliminary plat with three conditions, none of which is relevant to this appeal.

Following the Planning Board's recommendation to approve the preliminary plat, the Council held a public hearing on the matter on 17 April 2000. The Council listened to a presentation from petitioner's counsel and petitioner's land surveyor and engineer and to a presentation from the attorney representing a group of residents in the affected neighborhood who opposed the plan. The attorney representing the neighborhood group submitted a petition to Council, signed by over 150 people, expressing opposition to the plan. The Council then allowed citizens to comment on the proposed plan and accepted their written comments.[1]

The Council voted to continue the public hearing until 1 May 2000 in order to accommodate all citizens who wanted to be heard. On 15 May 2000, the Council again resumed the public hearing. The City Manager advised the Council that the Planning Board had determined that the proposed subdivision conformed to the City's Zoning Ordinance and Subdivision Regulations; he did not address whether the plat conformed to the density requirements of the Land Use Plan. In the interim between the 17 April and 15 May meetings of the Council, petitioner had submitted a third preliminary plat, in which revisions had been made to address the conditions imposed by the Planning Board on the revised plat. One Council member expressed

---

1. One citizen submitted a deed showing that he had a right-of-way across the land to be developed, which the proposed development infringed. The City Manager explained to the Council that the "private right-of-way issue is [not] something for the city to be concerned about," because "it's not the city's responsibility to protect a right-of-way."

confusion regarding which of the three plats was actually before the Council. Council members expressed their concerns regarding increased traffic from and the density of the proposed development. Ultimately, the Council voted to disapprove the preliminary plat.

Pursuant to the Subdivision Regulations, the reasons for the Council's disapproval were recorded in a letter to petitioner, dated 13 July 2000 ("the Letter"). The Letter states that the reasons for the Council's decision include:

(1) Section 90 of the [Subdivision Regulations] provides that the Council may consider a higher standard than those included in the [Subdivision Regulations], if the [Subdivision Regulations] minimum standards do not reasonably protect or provide for the public health safety or welfare. Council considered the public health, safety and welfare in making their decision;

(2) Section 703.1 of the [Zoning Ordinance] speaks to density, and requires that two-family dwellings be "unconcentrated." Council was concerned that the proposed subdivision plat violates this section by concentrating the number of two-family dwellings in one small area;

(3) Your clients confused Council by presenting different versions of the plat for consideration. While it was my opinion that Council was reviewing the preliminary plat dated January 27, 2000, some members of Council apparently thought that they were reviewing the preliminary plat dated February 29, 2000. This confusion made it difficult for Council to make a decision in connection with this matter. In fact, I was somewhat confused on that, and stated at the May 15 meeting, that it was the February 29, 2000, plat that we were reviewing, when I now believe that to be an error;

(4) Council was concerned about the width and present layout of Outland Avenue with regard to the issues of safety, health and general welfare. They were concerned that the new development might present traffic hazards and safety concerns in that neighborhood;

(5) Council wanted further clarification on several issues regarding safety, health and general welfare from the Planning Board;

GUILFORD FIN. SERVS., LLC v. CITY OF BREVARD

[150 N.C. App. 1 (2002)]

(6) Council was concerned about how the language of Section 703.1 [of the City's Zoning Ordinance] containing the "unconcentrated" language referred to hereinabove, is modified or affected by Section 703.5112, containing a 10,000 square foot requirement.

Petitioner appealed the Council's disapproval of its preliminary plat to the superior court, which affirmed the Council's decision. Petitioner now appeals the superior court's decision.

## II.

The General Assembly authorized cities to regulate the subdivision of land by enacting N.C. Gen. Stat. § 160A-371 (1999). If a city chooses to adopt a subdivision ordinance, that ordinance:

shall contain provisions setting forth the procedures to be followed in granting or denying approval of a subdivision plat prior to its registration.

The ordinance may provide that final approval of each individual subdivision plat is to be given by

(1) The city council,

(2) The city council on recommendation of a planning agency, or

(3) A designated planning agency.

N.C. Gen. Stat. § 160A-373 (1999).

The City of Brevard has chosen the second alternative provided by N.C.G.S. § 160A-373. Its Subdivision Regulations set out specific requirements with which a developer must comply and vests discretion with the Council in determining whether the application ultimately should be approved or denied. Section 85.8 of the City's Subdivision Regulations provides:

Upon receipt of the preliminary plat and the planning board's recommendation, the city council shall hold a public hearing in accordance with the provisions of G.S. 160A-364. The city council shall then review the plat at its next regularly scheduled meeting and decide approval or disapproval. If the city council decides disapproval, the reasons for such action shall be stated in writing, and specific references shall be made to regulations with which the preliminary plat does not comply.

By adopting these procedures, the City has provided that these decisions be made in a quasi-judicial forum. The City argues that the process is legislative because of the reference in its Subdivision Regulations to N.C. Gen. Stat. § 160A-364, which specifies that before adopting or amending an ordinance a city must hold a public hearing preceded by notice as prescribed by the statute. *See* N.C. Gen. Stat. § 160A-364 (1999). We do not believe, however, that the type of notice determines the nature of the proceeding. Rather, the type of decision to be made is the critical factor. *See County of Lancaster v. Mecklenburg County,* 334 N.C. 496, 507, 434 S.E.2d 604, 612 (1993) (characterizing quasi-judicial decisions as those "involv[ing] the application of zoning policies to individual situations"); *Northfield Dev. Co. v. City of Burlington,* 136 N.C. App. 272, 282, 523 S.E.2d 743, 750 ("Quasi-judicial decisions involve the application of . . . policies to individual situations rather than the adoption of new policies." (internal quotation marks omitted) (alteration in original)), *aff'd,* 352 N.C. 671, 535 S.E.2d 32 (2000) (per curiam). Thus, while "[t]he purpose of a legislative hearing is to secure broad public comment on the proposed action," the "purpose of a quasi-judicial hearing on an individual project . . . is to gather evidence in order to make factual findings." David W. Owens, *Legislative Zoning Decisions* 53 (2d ed. 1999); *see generally id.* at 10-11 (discussing the various types of zoning decisions).

The dissent would have this Court require approval on the ground that the subdivision approval decision is automatic, and "of right," once minimum requirements are met. While there are cases indicating that in some circumstances a petitioner is entitled to a permit as of right upon a *prima facie* showing of compliance with minimum requirements, those cases are based on different ordinances and do not apply here. *See, e.g., Nazziola v. Landcraft Props., Inc.,* 143 N.C. App. 564, 566, 545 S.E.2d 801, 803 (2001) (characterizing as "ministerial" an ordinance providing that " '[t]he Site Plan or Plot Plan shall be approved when it meets all requirements of this ordinance' "). Here, the Subdivision Regulations specifically give the Council discretion to disapprove the proposed subdivision.

While the City of Brevard could have adopted a "ministerial" subdivision ordinance, it did not. Instead, the City has enacted an ordinance establishing a quasi-judicial process, and specifically giving the City discretion to disapprove a proposed subdivision. The General Assembly clearly granted it the authority to do so, and we are bound to review this case by reference to the particular ordinance involved.

We have not found other similar ordinances in North Carolina, and this analysis does not apply to any municipality whose ordinances establish a different type of process for subdivision approval.

In *Refining Company v. Board of Aldermen*, 284 N.C. 458, 202 S.E.2d 129 (1974), our Supreme Court set out the requirements for a quasi-judicial proceeding. The Council was required to:

> (1) follow the procedures specified in the ordinance; (2) conduct its hearings in accordance with fair-trial standards; (3) base its findings of fact only upon competent, material, and substantial evidence; and (4) in allowing or denying the application, . . . state the basic facts on which it relied with sufficient specificity to inform the parties, as well as the court, what induced its decision.

*Id.* at 471, 202 S.E.2d at 138. The Council here did not conduct its hearing "in accordance with fair-trial standards," nor did it state the facts upon which it based its denial with "sufficient specificity" to allow the court to review its decision.

The "essential elements" of a fair trial are:

> (1) The party whose rights are being determined must be given the opportunity to offer evidence, cross-examine adverse witnesses, inspect documents, and offer evidence in explanation and rebuttal; (2) absent stipulations or waiver such a board may not base findings as to the existence or nonexistence of crucial facts upon unsworn statements; and (3) crucial findings of fact which are unsupported by competent, material and substantial evidence in view of the entire record as submitted cannot stand.

*Id.* at 470, 202 S.E.2d at 137 (citation and internal quotation marks omitted). Here, the City Attorney clearly believed and apparently advised the Council that the proceeding was legislative; he has continued to take the position, even before this Court on appeal, that it was a legislative proceeding. Indeed, the City Attorney acknowledged in the hearing before the superior court that "if [the proceeding] should have been a quasi-judicial hearing, I think we have to start from scratch, because the only thing I could see the Court doing is remanding it, to put witnesses under oath and start over again." In response, counsel for petitioner stated that petitioner waived certain procedural rights guaranteed by *Refining Company*.

The proceedings conducted by the Council, believing the process was legislative, do not bear any of the hallmarks of a "fair trial." The

entire process was designed to provide comment and opinion, not to produce evidence or to resolve factual issues.[2] Counsel for petitioner attempted after the fact to waive the right to have witnesses sworn and to cross-examine witnesses. This does not alter the fundamental legislative nature of what should have been a quasi-judicial proceeding.

Additionally, the Council failed to making findings of fact "with sufficient specificity to inform the parties, as well as the court, what induced its decision." *Id.* at 471, 202 S.E.2d at 138. The Council merely stated that it had considered the public health, safety and welfare, expressed its "concerns" regarding density and traffic issues, and expressed its confusion over which plat was before it for review. Moreover, the Council had to revisit the matter once the City Attorney told Council members that they had to give reasons for their denial of the application in accordance with the ordinance; until that point, the Council apparently thought all it had to do was vote.

Our Supreme Court has acknowledged that we should give latitude to "findings" made by lay bodies, such as a city council: "Since . . . city councils are generally composed of laymen who do not always have the benefit of legal advice, they cannot reasonably be held to the standards required of judicial bodies." *Id.* at 470, 202 S.E.2d at 137. However, the Council here did not make any proper findings of fact, and its statements of concern are too generalized for us to conduct a review.

For example, as evidenced by paragraph three of the Letter, the Council specifically declined to decide which plat was before it for review. In addition, the Council stated in its Letter that it was "concerned that the new development might present traffic hazards and safety concerns in that neighborhood." The Council failed to make any specific finding regarding traffic increase due to the development. In its brief, the City cites a memorandum from the City's Planning Director to the Planning Board, in which it is stated that Travis Marshall, a Transportation Engineer with the N.C. Department

2. We find the cases permitting waiver of certain rights, *see, e.g., Jarrell v. Board of Adjustment,* 258 N.C. 476, 128 S.E.2d 879 (1963), distinguishable in this regard. In *Jarrell,* for example, although the Supreme Court recognized that the right to have witnesses sworn could be waived, *see id.* at 481, 128 S.E.2d at 883, it was clear in that case that the Board of Adjustment had conducted a hearing for the purpose of receiving evidence and making findings of fact. *See id.* at 478-79, 128 S.E.2d at 881-82; *see also Burton v. Zoning Board of Adjustment,* 49 N.C. App. 439, 441, 271 S.E.2d 550, 551 (1980) (Board heard "extensive testimony from both sides" and "made findings of fact"), *cert. denied,* 302 N.C. 217, 276 S.E.2d 914 (1981).

GUILFORD FIN. SERVS., LLC v. CITY OF BREVARD

[150 N.C. App. 1 (2002)]

of Transportation, opined that the proposed development would generate an average of four daily trips per unit. According to the City, based on calculations that do not appear in that part of the record that was before the Council, this constitutes a 39% increase. Petitioner cites in its brief another memorandum from the City's Planning Director to the Planning Board, observing that Reuben Moore, a Division Engineer with the N.C. Department of Transportation, "[b]ased upon his professional opinion and his familiarity with a similar project in Sylva, . . . estimated two trips per day," which would have an "imperceptible" impact on the existing traffic. The Council neither acknowledged nor resolved this conflicting evidence.

Although the dissent would have us find facts based on the record before us on appeal, it is clear that "[i]t is not the function of the reviewing court, in such a proceeding, to find the facts but to determine whether the findings of fact made by the [governing body] are supported by the evidence before the [governing body] and whether the [governing body] made sufficient findings of fact." *Rentals, Inc. v. City of Burlington*, 27 N.C. App. 361, 364, 219 S.E.2d 223, 226 (1975); *see Long v. Board of Adjustment*, 22 N.C. App. 191, 205 S.E.2d 807 (1974). In *Triple E Associates v. Town of Matthews*, 105 N.C. App. 354, 413 S.E.2d 305, *disc. review denied*, 332 N.C. 150, 419 S.E.2d 578 (1992), cited by the dissent, we remanded the case back to the Town Board "with instructions to conduct a *de novo* evidentiary hearing . . . and to make specific findings of fact," *id.* at 362, 413 S.E.2d at 310, after we determined that some of the evidence on which the Town Board had relied to deny a permit was not competent and material, *see id.* at 360, 413 S.E.2d at 309. "[W]e [were] not prepared to say that all of the Town's evidence regarding the [relevant issue] was not competent and material so as to be insufficient to rebut petitioners' showing of compliance" with the ordinance in question, and we recognized that we do not find the facts, in lieu of the Town Board. *Id.* at 360-61, 413 S.E.2d at 309. On remand, the Council should make factual findings that are sufficiently specific to enable review.

III.

Since the Council did not resolve the critical issues of fact in a quasi-judicial hearing, we cannot adequately review its ultimate decision to disapprove the subdivision application. Accordingly, we remand to the superior court for further remand to the Brevard City Council, so that the Council may conduct additional proceedings con-

sistent with the requirements of *Refining Company. See Rentals, Inc.*, 27 N.C. App. at 365, 219 S.E.2d at 227 (remanding to superior court for order directing "that a further hearing be held by the Board [of Adjustment] for a determination, on competent and substantial evidence, of petitioner's asserted rights").

Vacated and remanded.

Judge TIMMONS-GOODSON concurs.

Judge TYSON concurs in part and dissents in part.

TYSON, Judge, concurring in part and dissenting in part.

I concur in part II of the majority opinion to the extent that the proper forum is a quasi-judicial and not a legislative hearing. I respectfully dissent from the remainder of part II and part III of the majority opinion. I would hold that petitioner complied with the requirements in the Zoning Ordinance and Subdivision Regulations and is entitled to approval of its subdivision plat.

Compliance with the requirements of the ordinance and regulations ensures that each application for approval of a subdivision plat will be considered on its own merits, and not granted or denied based on improper or irrelevant factors. *See Clark v. City of Asheboro*, 136 N.C. App. 114, 119, 524 S.E.2d 46, 50 (1999). It also provides predictability of future use, as well as the approval process. *Id.*

An applicant seeking approval for a subdivision plat who produces competent, material, and substantial evidence of compliance with the requirements of the ordinance and regulations, establishes a *prima facie* case of entitlement to approval. *Id.* at 119-20, 524 S.E.2d at 50 (citing *Coastal Ready-Mix Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 625, 265 S.E.2d 379, 382 (1980)); *Triple E Assocs. v. Town of Matthews*, 105 N.C. App. 354, 358-59, 413 S.E.2d 305, 308 (1992). The disapproval of the plat must "be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record." *Id.* (citations omitted).

I concur with the majority that the Brevard City Council's ("Council") decision to disapprove the preliminary subdivision plat was a quasi-judicial action. However, the unique requirement of a

public hearing for subdivision plat approval does not relieve the Council of its legal obligation to approve the plat if the requirements of the Ordinance and Subdivision Regulations are met.

## I. Standard of Review

The proper standard of review of a decision by a city council acting in a quasi-judicial capacity in the context of conditional use permits was announced by our Supreme Court in *Coastal Ready-Mix Concrete Co. v. Board of Commissioners, supra*. The Court held that the task of the reviewing court includes:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Id.* at 626, 265 S.E.2d at 383.

In reviewing the sufficiency and competency of the evidence, this Court determines "not whether the evidence before the superior court supported that court's order[,] but whether the evidence before the Town Council supported the Council's action." *Ghidorzi Constr., Inc. v. Town of Chapel Hill*, 80 N.C. App. 438, 440, 342 S.E.2d 545, 547 (1986). The evidence before the Council supported the approval of the preliminary subdivision plat for Laurel Village.

The proper standard for judicial review "depends upon the particular issues presented on appeal." *Amanini v. North Carolina Dep't of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994). Reviewing courts conduct a "*de novo*" review when a party alleges an error of law in the Council's determination and use a "whole record test" when sufficiency of the evidence is challenged or when a decision is alleged to have been arbitrary or capricious. *See In re Willis*, 129 N.C. App. 499, 501, 500 S.E.2d 723, 725 (1998).

## II. Fair-trial Standards

The majority opinion avoids addressing the complex merits of petitioner's appeal, and seeks to remand to the Council for a new hearing "in accordance with fair-trial standards" and findings of fact with "sufficient specificity to inform the parties, as well as the court, what induced its decision." I would hold that the public hearing before the Council was not procedurally flawed and that remand for a new hearing is unnecessary. *See Howard v. City of Kinston*, — N.C. App. —, —, 558 S.E.2d 221, 226 (2002).

Petitioner in this case does not contend that it was denied the procedural guarantees required in a quasi-judicial hearing. Both the petitioner and the opposition were represented by counsel at all hearings before the Council. Both sides made statements to the Council in explanation for their proposition of approval or denial and rebuttal of statements or information given by the other side or witnesses.

The Council received: (1) the staff reports concerning traffic information and density; (2) a petition signed by neighboring residents opposed to the development; (3) letters from concerned citizens and heard unsworn statements from six concerned citizens, for and against the development, at the 17 April 2000 public hearing; and (4) additional letters from concerned citizens and heard unsworn statements from twenty concerned citizens, for and against the development, at the 1 May 2000 public hearing.

Neither petitioner nor the opposition made a request that those concerned citizens be sworn, that they have the right to cross-examine the witnesses, or that they have the right to present evidence in rebuttal. The right to insist that the witnesses be under oath, the right to cross-examine witnesses, and the right to present evidence in rebuttal are waivable and are not crucial for proper review by this Court. *See Howard, supra; Craver v. Zoning Bd. of Adjustment of Winston-Salem*, 267 N.C. 40, 42, 147 S.E.2d 599, 601 (1966); *Burton v. New Hanover County Zoning Bd. of Adjustment*, 49 N.C. App. 439, 442, 271 S.E.2d 550, 552 (1980).

## III. Findings of Fact

After receiving, hearing, and reviewing all of the evidence, the Council entered specific findings of fact in support of its conclusion to disapprove the plat. The Council denied approval of the plat for three primary reasons: (1) section 90 of the Subdivision Regulations,

(2) section 703.1 of the Zoning Ordinance, and (3) confusion over which plat was being considered.

The superior court made an additional finding for denial: the requirements of the City's Land Use Plan. Respondent's letter to petitioner, dated 13 July 2000, does not recite noncompliance with the Land Use Plan as a basis for the disapproval. "[A] reviewing court, in dealing with the determination . . . which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." *Godfrey v. Zoning Bd. of Adjustment of Union County*, 317 N.C. 51, 64, 344 S.E.2d 272, 279-80 (1986) (citations omitted). It was error for the superior court to substitute this reason and rely on it in affirming the decision of the Council. *See Ballenger Paving Co. v. North Carolina State Highway Comm'n*, 258 N.C. 691, 695, 129 S.E.2d 245, 248 (1963) (review pursuant to *writ of certiorari* of an administrative decision is for error of law only and the superior court judge may not make additional findings).

I disagree with the majority's opinion that the Council failed to make "sufficient" findings of fact and merely expressed "concerns." The fact that the Council expressed "concerns" regarding traffic issues and density does not negate the fact that the Council made specific findings of fact. The record reflects that the "findings contra" to approval were not supported by competent, material, and substantial evidence.

## IV. Competent, Material, and Substantial Evidence

In its petition for judicial review, petitioner argued that the decision of the Council was not supported by substantial evidence, was arbitrary and capricious, and was affected by errors of law. Therefore, we apply a *de novo* review as to errors in law and the whole record test as to whether the decision was supported by substantial evidence, or was arbitrary and capricious. *See Willis*, 129 N.C. App. at 501, 500 S.E.2d at 725.

## A. Subdivision Regulations

In disapproving the preliminary plat, the Council relied on section 90 of the Subdivision Regulations, stating that:

Section 90 of the Code provides that the Council may consider a higher standard than those included in the Code, if the Code minimum standards do not reasonably protect or provide for the pub-

lic health safety or welfare. Council considered the public health, safety and welfare in making their decision.

The Council cited public health, safety, and welfare concerns with respect to the width and layout of Outland Avenue, the public access adjoining the proposed development, and, particularly, an increase in traffic.

There is no evidence in the record to support the disapproval of the plat on the basis of public health, safety, and welfare pursuant to section 90 of the Subdivision Regulations. The information furnished by the Brevard Police Department was before the Council as part of a staff report by the Planning Director, and indicated that the traffic count for Outland Avenue was 290 vehicle trips, within a twenty-four hour period, and that zero to one accident occurred on Outland Avenue between 1995 and 1999. Reuben Moore, Division Engineer with the North Carolina Department of Transportation, informed the Planning Director that the proposed development would average two daily trips per unit. Travis Marshall, Transportation Engineer with the North Carolina Department of Transportation, informed the Planning Director that the proposed development would average four daily trips per unit. Respondent argues and the superior court found that the proposed development would increase traffic by thirty-nine percent. The percentage of traffic increase standing alone without additional evidence of the impact of that increase is irrelevant. Additionally, Reuben Moore stated to the Planning Director that the impact on traffic from the proposed development would be "imperceptible." There was no other evidence before the Council to contradict this opinion. Accordingly, there is no evidence to support this finding by the Council or superior court.

### B. Zoning Ordinance

The Council also cited section 703.1 of the Zoning Ordinance as a reason for disapproving the preliminary plat, stating that:

Section 703.1 of the Code speaks to density, and requires that two-family dwellings be "unconcentrated." Council was concerned that the proposed subdivision plat violates this section by concentrating the number of two-family dwellings in one small area.

The Council raised a concern as to the meaning of "unconcentrated" as stated in the "Purpose" section and the specific minimum lot requirement of 10,000 square feet stated in section 703.51 of the

Zoning Ordinance. The general rule is that a zoning ordinance, being in derogation of common law property rights, should be construed in favor of the free use of property. *See Yancey v. Heafner*, 268 N.C. 263, 266, 150 S.E.2d 440, 443 (1966); *City of Sanford v. Dandy Signs, Inc.*, 62 N.C. App. 568, 569, 303 S.E.2d 228, 230 (1983). This construction is particularly required where petitioner's proposed use is an expressly permitted use of right under the Zoning Ordinance.

The parcel of land upon which petitioner proposes to develop Laurel Village is zoned R-2 Residential. Duplex dwellings are expressly permitted uses of right under section 703.2 of the Zoning Ordinance. The purpose for R-2 zoning is stated in section 703.1:

> Purpose. This district is established to protect areas in which the principal use of the land is for medium density single and uncon-centrated two-family dwellings and for related recreational, reli-gious, and educational facilities normally required to provide for an orderly and attractive residential area.

The minimum lot areas for R-2 zoning are defined in section 703.51. Subsection 703.5112 states that the minimum lot area for a duplex is "10,000 square feet."

Respondent argues that "unconcentrated" in the "Purpose" sec-tion is an additional requirement to the "minimum lot area" of 10,000 square feet. I disagree. In statutory construction, the sections of the Zoning Ordinance are read in *para materia*, and not in isolation of one another.

This Court held in *C. C. & J. Enterprises, Inc. v. City of Asheville*, 132 N.C. App. 550, 554, 512 S.E.2d 766, 770 (1999), that "a generalized statement of intent of the specifications that follow" can-not be used as a basis to reject a permit that meets all the require-ments. The purpose of the R-2 district is "to protect areas in which the principal use of the land is for medium density single and uncon-centrated two-family dwellings. . . ." Article IV of the Zoning Ordinance specifically defines density as "[t]he number of dwelling units per acre [of] land developed or used for residential purposes. *Unless otherwise clearly stated, density requirements in this ordi-nance are expressed in dwelling units per net acre . . . .*" (emphasis supplied). Section 703.5112 specifically states the "minimum lot area" required to meet the purpose of "unconcentrated" two-family dwellings. In light of the definition of density and section 703.5112 of the Zoning Ordinance, I conclude that the statement of purpose in

section 703.1 is "only a generalized statement of intent of the specifications that follow."

Respondent argues that in the case of statutory construction, the word "unconcentrated" must be given its ordinary meaning—"not clustered or gathered together closely." The superior court found that, using the ordinary meaning of "unconcentrated," fifteen duplexes on sixteen lots is not "unconcentrated." There is no evidence to support this finding by the Council and superior court. "Unconcentrated" is a general term set out in the "Purpose" section and, when read in *para materia*, is specifically defined in section 703.51 and subsection 703.5112 of the Zoning Ordinance.

"[W]here a zoning ordinance specifies standards to apply in determining whether to grant a special use permit and the applicant fully complies with the specified standards, a denial of the permit is arbitrary as a matter of law." *Woodhouse v. Board of Comm'rs of Nags Head*, 299 N.C. 211, 219, 261 S.E.2d 882, 887 (1980) (citation omitted). Here, petitioner fully complied with the standards specified in the Subdivision Regulations and Zoning Ordinance. Both the City Manager and the City Attorney advised the Council that the preliminary plat was in full compliance.

Statements by the Council members that "It bothers me to see things like that [children riding their bicycles, skating down the street, playing ball in that street, balls rolling down the street]" or "I've known a number of these people in [the adjoining neighborhood] . . . in my conscience I just cannot vote for this project," opine about possible and subjective effects of the proposed development and are not adequate grounds for disapproval of the preliminary plat. *See id.* at 220, 261 S.E.2d at 888 (speculative or mere opinion testimony about the possible effects of a permit are insufficient to support the Council's findings); *Triple E*, 105 N.C. App. at 359, 413 S.E.2d at 308 ("The Town Board may not create new requirements not outlined in the ordinance to deny the permit.").

*Humble Oil & Refining Co. v. Board of Aldermen of Chapel Hill*, 284 N.C. 458, 202 S.E.2d 129 (1974), dealt with a special use permit which has additional requirements not present in this case of subdivision plat approval. In the present case, petitioner made a prima facie showing of compliance with the Subdivision Regulations and Zoning Ordinance. No evidence appears in the record to support the findings for denial of petitioner's preliminary plat. I conclude that the Council acted arbitrarily and capriciously in denying petitioner's

preliminary plat. *Woodhouse,* 299 N.C. at 219, 261 S.E.2d at 887 (if no competent, material evidence appears to support findings for denial, the reviewing body must grant the special use permit when the applicant fully complies with the specified standards and failure to do so is arbitrary as a matter of law).

## V.  Conclusion

I would reverse the decision of the superior court, affirming the disapproval by the Council and remand, not for a new hearing, but for entry of an order directing the Council to approve petitioner's subdivision plat.