MALCOLM M. MALLOY, III AND PIONEER WELDING SUPPLY, PETITIONERS v. THE ZONING BOARD OF ADJUSTMENT OF THE CITY OF ASHEVILLE RESPONDENT

No. COA02-318

(Filed 31 December 2002)

## 1. Zoning— new structure—above-ground storage tank

There was sufficient evidence that a welding supply company's new above-ground liquid oxygen storage tank was a new structure as defined by the City's Unified Development Ordinance, and the trial court did not err in reaching that conclusion, where petitioners poured a concrete slab, placed the tank

on the slab with cranes, and then affixed it there with three one-inch bolts.

## 2. Zoning— nonconforming use—expansion—larger above-ground storage tank

The trial court did not err by concluding that a welding supply company's new liquid oxygen storage tank constituted an expansion of a nonconforming use where the new tank was larger, had a higher capacity, and enabled additional or faster service, even though petitioners contended that their customer base had not increased as a result of the new tank.

Appeal by petitioners from judgment entered 4 January 2002 by Judge Ronald K. Payne in Buncombe County Superior Court. Heard in the Court of Appeals 30 October 2002.

*Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Craig D. Justus and Albert L. Sneed, Jr., for petitioner-appellants.*

*City Attorney's Office, by Assistant City Attorney Martha Walker-McGlohon, for respondent-appellee.*

HUDSON, Judge.

Petitioners appeal from an order entered by Superior Court Judge Ronald K. Payne affirming the decision of the Zoning Board of Adjustment of the City of Asheville.

Petitioner Malloy owns real property located at 100 Park Avenue ("the Property") within the zoning jurisdiction of the City of Asheville ("the City"). Petitioner Pioneer Welding Supply leases the Property for the operation of a welding and gas supply business. For more than thirty years, the Property has been used for commercial-industrial purposes. In 1997, the City re-zoned the property to RM-8, Residential Multi-Family Medium Density District, and thereafter, Pioneer was allowed to continue to operate their business on the Property as a grandfathered nonconforming use.

In addition to an office building and a storage warehouse, petitioners kept a 3,000 gallon above ground storage tank ("the old tank") on the Property to use for storing liquid oxygen. This tank was on the Property when the City adopted its Unified Development Ordinance ("UDO") in 1997, and thus allowed it to remain on the Property. In October, 1999, petitioners replaced the old tank with a 9,000 gallon tank ("the new tank"). To facilitate the installation of the new tank,

petitioners had poured a three foot thick concrete slab, thirteen feet by ten feet, approximately ten feet from the location of the old tank. The new tank was anchored to the concrete slab and stabilized with three bolts.

After neighbors of the Property complained, on 2 November 1999 the City sent petitioners a Violation Notice, which informed them that the new tank constituted the prohibited expansion of a nonconforming use. Scott Shuford, the City's Planning and Development Director, followed up the Violation Notice with a letter ruling that the new tank violated the City's UDO. On 2 December 1999, petitioners filed an appeal with Respondent Zoning Board of Adjustment ("BOA"). On 27 March 2000, the BOA conducted a hearing on petitioners' appeal. By a 3 to 2 vote, the BOA upheld the City's ruling. Petitioners then sought review in the superior court by writ of certiorari. Following a hearing, Judge Payne affirmed the BOA's decision. Petitioners appealed to this court.

[1] In their first argument, petitioners contend that the superior court erred as a matter of law by concluding that the new tank is a "structure" as defined by the City's UDO. "Where the Petitioner alleges that a board decision is based on error of law, the reviewing court must examine the record *de novo*, as though the issue had not yet been determined." *Whiteco Outdoor Adver. v. Johnston County Bd. of Adjust.*, 132 N.C. App. 465, 470, 513 S.E.2d 70, 74 (1999). In addition, petitioners argue that the whole record does not contain substantial, competent and material evidence in the record to support the BOA's finding that the new tank is a structure. Although this is petitioners' last argument, we address it with the first issue since they are so closely related. On review of the sufficiency of the evidence, this Court applies the "whole record" test. *Id.* at 468, 513 S.E.2d at 73. Under the "whole record" test, we must determine "whether the Board's findings are supported by substantial evidence contained in the whole record." *Id.* Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Id.* Applying both the whole record test and *de novo* review, we find no error in the board's decision or the superior court's order affirming that decision.

Section 7-2-5 of the City's UDO defines "structure" as "that which is built or constructed." City of Asheville, N.C. Unified Development Ordinance sec. 7-2-5 (2002). Where the language of an ordinance is plain and unambiguous, "it must be given effect and its clear meaning may not be evaded by an administrative body or a court under the

guise of construction." *Utilities Comm. v. Edmisten, Atty. General,* 291 N.C. 451, 465, 232 S.E.2d 184, 192 (1976). In addition, "[w]ords in a statute must be construed in accordance with their plain meaning unless the statute provides an alternative meaning." *Kilpatrick v. Village Council,* 138 N.C. App. 79, 86, 530 S.E.2d 338, 343 (2000). Petitioner argues that the terms "built" and "constructed" are given an alternative meaning in section 7-2-5 of the UDO, which defines the terms "building" and "construction." As these terms are not the precise terms used to define structure, we decline to accept petitioners' contention. The plain meaning of "built," is "[formed] by combining materials or parts; to erect; construct." *The American Heritage Dictionary of the English Language* 174 (1978) Likewise, the plain meaning of "constructed" means "[formed] by assembling parts; build; erect." *Id.* at 288.

Here, before placing the new tank, petitioners first had a concrete slab poured, per specifications determined by a licensed engineer as suitable to accommodate the new tank. The concrete slab was poured to a depth of three feet, covering an area 10 feet by 13 feet, approximately 10 feet from the location of the old tank. The new tank was then brought to the Property, placed on the concrete slab with two cranes, and affixed there with three one-inch diameter bolts. This evidence leads us to conclude that the new tank was "form[ed] by combining materials or parts" and was "erected" on the Property and thus constituted a "structure" under the City's UDO.

[2] Petitioners next argue that the superior court erred as a matter of law in concluding that the placement of the new tank on the Property constituted an enlargement or expansion of a nonconforming use. We disagree.

In its "Decision Affirming Interpretation," the BOA concluded as a matter of law that the "relocation" and "replacement of the liquid oxygen tank constituted an expansion of the non-conforming use of a structure as defined under Section 7-17-6(b)(2) of the UDO." Section 7-17-6 of the City's UDO governs nonconforming uses of structures. Specifically, section 7-17-6(b)(2) provides that:

A nonconforming use of a structure may be enlarged or extended only into portions of the structure which existed at the time that the use became nonconforming. No structural alterations are allowed to any structure containing a nonconforming use except (1) *where such alteration does not enlarge the structure,* or (2) where such alteration is required by law or an order from the

building safety director, fire chief or the planning and development director to ensure the safety of the structure.

City of Asheville, N.C. Unified Development Ordinance sec. 7-17-6(b)(2) (2002) (emphasis added).

In *Kilpatrick v. Village Council*, this Court addressed the question of whether the creation of additional campsites on a nonconforming parcel of land was a violation of a Village of Pinehurst ordinance that prohibited the expansion or enlargement of a nonconforming use. In analyzing the ordinance, we noted that "[t]he plain meaning of 'enlarge' is 'to become bigger'; 'to widen in scope.' A nonconforming use is, therefore, 'enlarged' when the scope of the use is increased." *Kilpatrick v. Village Council*, 138 N.C. App. 79, 86, 530 S.E.2d 338, 343 (2000) (citations omitted).

Here, it is not disputed that the new tank is physically larger than the old tank. The old tank was approximately 96 to 100 inches in diameter, approximately 16 to 17 feet tall, with a 3,000 gallon capacity, but the new tank was 110 inches in diameter, approximately 25-26 feet tall, with a 9,000 gallon capacity. Though petitioners contend that its customer base has not increased as a result of the placement of the new tank, the increased storage capacity provides more volume and will enable them to provide additional or faster service. Indeed, petitioners admit that returning to the 3,000 gallon tank will slow down business. From this evidence, we conclude that petitioners' placement of the new tank physically enlarges the structure and also increases the scope of the nonconforming use.

For the foregoing reasons, the order of the superior court is affirmed.

Affirmed.

Judges McGEE and THOMAS concur.